**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                            **CRIMINAL ACTION**

**VERSUS**                                                              **NO. 12-84-BAJ-RLB**

**THANG MINH TRAN**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 29, 2016.

    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-84-BAJ-RLB |
| THANG MINH TRAN | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the court on the motion of the defendant, Thang Minh Tran, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (R. Doc. 141). In this motion, the defendant asserts that he received ineffective assistance of counsel regarding his plea agreement and sentence. The government has filed an opposition. (R. Doc. 149). The defendant has filed a reply. (R. Doc. 150). There is no need for oral argument or for an evidentiary hearing.

**I.     Procedural History and Factual Background**

On May 17, 2012, a thirteen-count indictment was filed in which the defendant was charged with five counts, including one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h), and four counts of laundering of monetary instruments, in violation of 18 U.S.C. § 1956(a)(3)(B). The defendant made his first appearance with retained counsel, Mr. Lance Unglesby ("Unglesby").

On July 2, 2012, the government filed a Motion for Inquiry into a Potential Conflict of Interest. (R. Doc. 32).

On August 9, 2012, at the defendant's request, the parties filed a Joint Motion to Substitute David Bourland ("Bourland"), new counsel retained by the defendant, for Unglesby. (R. Doc. 51). The court granted the motion the next day. (R. Doc. 53).

1

On December 12, 2012, the defendant's Plea Agreement was filed. (R. Doc. 66). The defendant entered pleas of guilty to one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h), and three counts of laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(3)(B). The defendant further agreed to forfeit to the United States his interests in the assets set forth in the forfeiture allegation of the Indictment, specifically including, but not limited to, the following assets seized as authorized by the warrant issued under Case No. 12-84-BAJ-DLD: (i) $220,702.82 contained in Dow Louisiana Federal Credit Union account 7000557, (ii) $116,101.05 contained in Hancock / Whitney account number 37534892, and (iii) $655,658.50 in United States currency, which funds were involved in the money laundering offenses.

As part of the Plea Agreement, the defendant waived his right to appeal and to seek collateral review except under certain narrow circumstances and except as to claims of alleged ineffective assistance of counsel, and the United States agreed that no additional criminal charges would be brought against the defendant arising out of the offenses alleged in the indictment. The Plea Agreement made clear that the maximum sentence faced by the defendant was twenty (20) years imprisonment, a fine of not more than $500,000, or both the maximum term of imprisonment and the maximum fine. The Plea Agreement further provided that if the court imposed a term of imprisonment, the defendant may also receive a term of supervised release after imprisonment of not more than three (3) years.

The court's minute entry of December 12, 2012, reflects that at the defendant's guilty plea colloquy, the defendant was sworn and questioned by the court; the defendant waived reading of the indictment; the Plea Agreement was summarized and filed into the record; and the

factual basis found in the Plea Agreement was read into the record. The minute entry further provides that the defendant entered a plea of guilty to counts 1, 5, 6, and 7 of the indictment.

The factual basis for the plea, as provided in the Plea Agreement, can be summarized as follows.  The defendant and his co-defendants (his father and sister) operated a business called Quality Express located in Baton Rouge, Louisiana, that provided three types of financial services to its customers: check cashing, currency exchanges and money transfers.  As a business engaged in the transmission of funds and the exchange of currency, Quality Express was required under federal law to file Currency Transaction Reports (CTRs) and Suspicious Activity Reports (SARs) with the Department of the Treasury.  Between March 2010 and April 2011, a cooperating source (CS) and an IRS Criminal Investigation Special Agent (SA), provided a total of $275,000, on six separate occasions, to the defendant and other defendants who agreed to exchange or transfer the currency from smaller bills to larger bills so that it could be more easily concealed and avoid detection by law enforcement.  The CS and SA represented that the money was proceeds of illegal drug trafficking.  The defendants subtracted and kept approximately one percent of the currency exchanged as a commission.  As a means for concealing the exchanges and transfers, the defendants used multiple bank accounts in the names of themselves and nominees and failed to file SARs or CTRs regarding of the $275,000 from the CS and SA.  The defendants also maintained multiple business entities to conceal proceeds and facilitate their money laundering activity.

Based upon statements made by the defendant at the plea colloquy, the court found that the defendant had knowingly, voluntarily and intelligently, with the advice of counsel, entered into the Plea Agreement, and the court accepted the defendant's guilty plea and ordered the preparation of a Pre–Sentence Investigation Report ("PSR").

3

A PSR was thereafter prepared and made available to the parties on May 14, 2013, and an addendum to the PSR was disseminated on June 6, 2013.

The defendant's initial sentencing hearing was held on June 24, 2013. (R. Doc. 139). At the hearing, the defendant confirmed that he had received a copy of the PSR, that he had read it, and that he had discussed its contents with his counsel. At the hearing, the district judge noted that the United States had filed an objection to the PSR on the basis that it did not include a "sophisticated means" enhancement. After hearing argument from the government, the court required additional evidence from the government to demonstrate the need for a sophisticated means enhancement.

The defendant's second sentencing hearing was held on September 19, 2013. (R. Doc. 140). The defendant was sentenced to serve 70 months in confinement.

The Judgment was signed and entered on October 4, 2013. (R. Doc. 129).

The defendant filed the instant motion to vacate, set aside or correct sentence approximately a year later. The motion expressly provides that the grounds for the motion is that the "conviction was obtained and sentence[] imposed in violation of the Sixth Amendment Rights to Counsel, and the right to Effective Assistance of Counsel at all critical stages of the proceedings." (R. Doc. 141 at 2).

The defendant asserts in this motion that his criminal conviction should be overturned because he was provided with ineffective assistance of counsel when his trial attorney was ineffective for (1) advising him to plead guilty where his acts did not constitute a crime; (2) advising him to plead guilty while failing to properly investigate the allegations against the defendant; and (3) failing to argue that the defendant's sentence should not be subject to a two-level enhancement under U.S.S.G. § 2S1. The defendant also asserts that it was part of his

4

agreement with the government "that the government would drop the cases it had against [the defendant's] sister and his father" and that the government breached that agreement (R. Doc. 141-1).[1]

## II. Law and Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final. *United States v. Cervantes,* 132 F.3d 1106 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*), *cert. denied,* 502 U.S. 1076 (1992)). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States,* 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal). As a general rule, a valid guilty plea waives all non-jurisdictional defects, including any ineffective-assistance-of-counsel claims, unless the ineffective-assistance claims affected the voluntariness of the plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.1993), *cert. denied*, 466 U.S. 906 (1984).

---

[1] Because the defendant is proceeding pro se, the Court is liberally construing his assertions of error. It is somewhat difficult to ascertain what distinction, if any, the defendant makes between claims of ineffective assistance of counsel and more substantive claims that either should have been raised on direct appeal or are otherwise subject to waiver based on the terms of his plea agreement.

5

The courts of this Circuit have repeatedly held that, as was done in the instant case, a defendant may waive his right to appellate review and to collateral review under 28 U.S.C. § 2255. *See United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002). In evaluating whether a defendant's waiver is effective to bar such review, the court conducts a two-step inquiry, asking (1) whether the waiver was voluntary and intelligent, and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement and employing normal principles of contract interpretation. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (citing *United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005)).

In order for a defendant's guilty plea to be voluntary and intelligent, the defendant must have understood the true nature of the charges against him and the direct consequences of his plea, and he must not have been induced to plead guilty by coercion, intimidation, unmet promises, misrepresentation or faulty legal advice. *See Brady v. United States*, 397 U.S. 742, 755 (1970). In order for a waiver of appeal and collateral review rights to be voluntary and intelligent, the defendant must have known both that he had a right to seek appellate and collateral review and that he was giving up that right. *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994), *cert. denied,* 513 U.S. 893 (1994). If the plea and waiver themselves were knowing, intelligent and voluntary, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *White*, 307 F.3d at 343-44.

In other words, where the record of a plea colloquy clearly evidences (1) that a defendant has read and understood the plea agreement and (2) that he raised no objections regarding the waiver of appeal provisions, "the defendant will be held to the bargain to which he agreed." *Portillo*, 18 F.3d at 292-93. Notwithstanding, it is important to note that even where a defendant has waived the right to appellate and collateral review, a claim of ineffective assistance of

6

counsel may survive such a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself." *White*, 307 F.3d at 343.

### A.     Ineffective Assistance of Counsel

As set forth above, the defendant contends that he was provided with ineffective assistance of counsel when his attorney (1) advised him to plead guilty where his acts did not constitute a crime; (2) advised him to plead guilty while failing to properly investigate the allegations against the defendant; and (3) failed to argue that the defendant's sentence should not be subject to a two-level enhancement under U.S.S.G. § 2S1.

A habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

> (1) That his counsel's performance was "deficient", *i.e.,* that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2) That the deficient performance prejudiced his defense, *i.e.,* that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See*, *e.g.*, *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See*, *e.g.*, *Bridge v. Lynaugh,* 838 F.2d 770 (5th Cir. 1988).  This court, therefore, must make every effort to

7

eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge*, 838 F.2d at 773; *Martin,* 796 F.2d at 816.

If the defendant satisfies the first prong of the *Strickland* test, his petition must also affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh,* 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816. The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17.

The defendant's first argument regarding ineffective assistance of counsel is that the charges against him were without merit because he "dispute[s] that this action was a crime." (R. Doc. 141-1 at 13). In his motion, Defendant claims that he "did nothing other than take small bills and change them for larger denominations" and asserts that his conduct is indistinguishable from Coinstar or any casino with ATMs. (R. Doc. 141-1 at 13-14). The defendant does not, however, dispute the accuracy of the factual basis contained in his plea agreement. (R. Doc. 66 at 6-7). That factual basis provides, in part, that the defendant provided the exchange of currency specifically to avoid detection by law enforcement and that the money involved was represented to him to be proceeds of illegal drug trafficking. (R. Doc. 66 at 6-8) (currency provided to Defendant "who agreed to exchange or transfer the currency so that it could be more

easily concealed and avoid detection by law enforcement"; CS and A.J. "represented the monies to be proceeds of illegal drug trafficking"; "CS and A.J. purported to be exchanging the smaller bills for larger bills so that the drug proceeds could be more easily concealed"; $90,000 delivered under the direction of the defendant "which the defendants believed were drug proceeds"; defendant failed to file SARs or CTRs regarding receipt of approximately $275,000 "which the defendants believed to be the proceeds of specified unlawful activity"). This uncontroverted factual basis was provided to the court in support of the defendant's guilty pleas and the court found that the factual was sufficient for the guilty pleas. (R. Doc. 65). The undersigned finds no reason to upset that determination, and agrees that the elements of the violations to which the defendant pled guilty were satisfied. Defense counsel's performance was not deficient for failing to advance a meritless argument.

The defendant also cites various cases for the proposition that courts could find ineffective assistance of counsel based on an attorney's failure to properly conduct a pretrial investigation. Presumably, Defendant is challenging the validity of his guilty plea on the basis that his attorney's failure to investigate compromised his ability to enter a knowing and voluntary plea. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he

9

would not have pleaded guilty but for the error. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

The court finds that any claim regarding counsel's failure to investigate fails. The defendant does not point to any action that his attorney failed to take prior to the entry of the guilty plea or how that investigation would have altered the proceedings in this case. For example, the defendant asserts that the effective assistance of counsel includes the right to have the lawyer effectively litigate a motion to suppress evidence (R. Doc. 141-1 at 10), yet the defendant fails to identify any basis for any suppression motion or even any evidence subject to suppression. The defendant claims that he had the right to have a lawyer adequately investigate the facts, yet fails to identify any investigation that was not undertaken. The defendant does not allege, and cannot show, that there were any errors by his attorney affecting the validity of his guilty plea or that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[2]

To the extent that the defendant asserts that the failure to investigate is based on his claim that his conduct was not a crime, the court finds that argument to be without merit for the reasons set forth above.

---

[2] The defendant points to a reference at his sentencing to $530,000,000 in funds being involved with his business. He states in his Memorandum that had he "understood the government believed that his store generated $530,000,000 in sales over a five year period he would not have accepted the plea agreement and would have gladly paid for a forensic accountant." (R. Doc. 141-1 at 16). Contrary to defendant's assertion, there is nothing in the record to demonstrate a position by the government that the defendant generated $530,000,000 in sales or gross revenues. The defendant's sentencing guideline offense level was based on a value of laundered funds of $275,000. (R. Docs. 94, 101). In support of a specific guideline enhancement, the government indicated that database queries revealed more than 2400 CTRs totaling more than $530,000,000 in cash running through the defendant, his family, and associated businesses, leading to the identification of 37 different bank accounts. Both Attorney Bourland and the attorney for the government make clear at the sentencing that it is not the position of either that this money was all attributable to money laundering. (R. Doc. 140 at 20). The district judge likewise made it clear that the defendant has not been charged with that amount of money. (R. Doc. 140 at 20-21).

10

The defendant also contends that his attorney was ineffective for failing to argue that the defendant's sentence should not be subject to a two-level enhancement under Section 2S1. Courts which have addressed this issue, however, have found no ineffective assistance of counsel where the defendant's attorney has failed to warn of possible enhancements under the Sentencing Guidelines. *See United States v. Collins*, No. 09-606, 2009 WL 910842 (S.D. Miss. April 1, 2009). *See also Thomas v. United States,* 27 F.3d 321, 327 (8th Cir.1994) (finding that, inasmuch as a district court is only required to advise a defendant of the maximum and minimum sentences which he faces, and is not required to inform the defendant that the applicable Sentencing Guideline range may include enhancements based upon findings of relevant conduct, the failure of an attorney to inform his client of possible enhancements does not show that the attorney's representation has fallen below an objective standard of reasonableness, particularly where the court has advised the defendant that the ultimate sentence will be determined only after receipt and review of a PSR).

Accordingly, there can be no finding in the instant case that the defendant's attorney provided ineffective assistance of counsel for failing to *advise of possible enhancements* under the Sentencing Guidelines, and this claim must be rejected.

Considering defendant's claim that his attorney was ineffective in failing to argue that the Section 2S1 enhancement was inapplicable, that argument likewise fails. Defendant complains that during the time between his two sentencing hearings, his attorney was provided certain information that led to the withdrawal of any challenge to the application of this two level enhancement. (R. Doc. 141-1 at 19). Defendant complains that he was never personally given any documents and was simply informed by his lawyer that the enhancement would apply.

11

A review of the record in this case reveals that this enhancement was raised by the government in an objection to the presentence report. (R. Doc. 101). The applicability of this enhancement was specifically challenged by Attorney Bourland at the sentencing hearing on June 24, 2013. (R. Doc. 139). The district judge informed that parties that additional evidence would be needed and the sentencing was rescheduled.

In anticipation of a hearing on this issue, the government submitted a Sentencing Memorandum, setting forth its position regarding the applicability of the enhancement. Included was 133 pages of supporting documentation. Upon receipt of the government's evidence, Attorney Bourland withdrew his objection regarding the applicability of the enhancement. As he expressed to the district judge, Attorney Bourland determined that his "objection was inappropriate" and that was why he withdrew it. (R. Doc. 140 at 17). The district judge found that the enhancement applied and incorporated it into the applicable guideline range. Based on a review of the record, the undersigned agrees that the enhancement was appropriately applied and therefore Attorney Bourland's performance cannot be found deficient for failing to persist in a meritless objection.[3]

### B. Plea Entered Under Duress / Government Breach of Plea Bargain

The defendant alleges in the motion that his plea was entered under duress. To the extent this argument is premised on his assertion that the "charges brought against him were without merit," the court incorporates its analysis above regarding this issue.

---

[3] In his affidavit submitted with the government's opposition, Attorney Bourland asserts that he discussed withdrawing the objection with the defendant prior to sentencing and advised that maintaining the meritless objection would not create any beneficial adjustment, but instead would offer a strong likelihood of having an adverse effect, possibility resulting in an increased guideline range or a sentence at the top end of the guideline range. (R. Doc. 149-1 at 2). As the defendant was sentenced at the lowest end of the guideline range and no additional enhancements or departures were applied, it appears in hindsight that his advice was appropriate.

To the extent the defendant alleges that he did not understand the consequences of his plea or the agreement that he had with the government, the court disagrees.  The record establishes that the defendant's plea and waiver were voluntary and intelligent and were not themselves the product of any alleged ineffective assistance of counsel or deficiency in the plea colloquy.  The transcript of the defendant's plea colloquy reflects that he was advised, among other things, of the charges against him, of the statutory maximum terms of imprisonment which he faced, of the rights which he was giving up by entering into the plea, of the court's obligation to take into account (but not necessarily to follow) the United States Sentencing Guidelines, and of the effect of the waiver of his rights to appeal and to seek collateral review except under certain conditions.  The defendant signified that he understood the plea agreement; that he had discussed his case with this attorney; that he was satisfied with the representation provided by his attorney; that he had not relied upon any promises, inducements, intimidation or coercion; and that he was willing to accept the terms of the plea agreement.  The Plea Agreement specifically provides that he "acknowledges that the terms herein constitute the entire agreement and that no other promises or inducements have been made." (R. Doc. 66 at 8).  Most notably, there is no representation by the government anywhere in the agreement regarding the prosecution of any third parties.

The record of this case, together with the defendant's testimony at his re-arraignment colloquy, clearly establish that the defendant's decision to plead guilty was not coerced and that it was entirely knowing, intelligent and voluntary.  As a general rule, "a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)).  "Solemn declarations in open court carry a strong presumption of verity," forming a

13

"formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Indeed, the Fifth Circuit accords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). And any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight." *United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994), *cert. denied,* 513 U.S. 1064 (1994). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

The defendant also alleges that he took the plea agreement based on an agreement that the government would not prosecute his elderly father and sister. A guilty plea based on a breached plea agreement is subject to collateral attack in a section 2255 motion. *See United States v. Cates*, 952 F.2d 149, 151-52 (5th Cir. 1992). If the government agrees to a plea agreement, it "must strictly adhere to the terms and conditions of its promises in the agreement." *See United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005) (citation omitted). The defendant bears the burden of proving the underlying facts resulting in the breach by a preponderance of the evidence. *See United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007) (citation omitted). To determine whether a plea agreement has been breached, the court considers whether the government's conduct is consistent with a reasonable understanding of the plea agreement by the defendant. *Id*. at 387-88 (citations and quotations omitted).

The records of this case show that the prisoner is not entitled to relief based on any breached Plea Agreement. The Plea Agreement with the defendant and the government contains no representation that the government would not prosecute any third parties. (R. Doc. 66). The

defendant specifically represented to the court that there were no other agreements with the government that were not specified in the Plea Agreement.

In support of his position that there was some additional deal, the defendant points to one statement by his attorney at the sentencing where his attorney recognizes that the defendant appreciated the government dismissing his sister and father from the indictment and that this was part of the defendant's consideration in terms of coming in and debriefing. (R. Doc. 150-4 at 10). Even if this was a factor in his decision to <u>cooperate</u>, that does not support a finding that there was any side deal regarding third parties. Nowhere in the transcript does it indicate that the defendant's plea was conditioned on any such dismissal or that there was any agreement not to prosecute his sister or father. Notwithstanding the absence of such an agreement, the defendant does not dispute that these family members were dismissed from the indictment as represented by his attorney.[4] Assuming that there was an agreement, it appears that the government satisfied its terms.

Based on the foregoing, the court finds that defendant's argument that the plea was entered under duress or that he did not understand the consequences of his plea is without merit. The court further finds that there was no breach of any agreement with the government regarding any third parties, including the defendant's sister or father.

---

[4] Even if the government agreed not to prosecute the defendant's sister, Trang Dang Tran, the court is unpersuaded that there has been any violation of that agreement. There is no dispute that she was dismissed from the Indictment. (R. Doc. 77). She did enter into a pretrial diversion agreement with the government in case no. 13-cr-24-BAJ-SCR. That prosecution was diverted according to the terms of that agreement, and the charged in the Bill of Information were dismissed. Because the court does not find that the defendant's plea was conditioned on any such unwritten agreement, the court need not decide whether the diverted prosecution and ultimate dismissal was inconsistent with that agreement.

15

## III.  Recommendation

It is recommended that the defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 141) be denied.

Signed in Baton Rouge, Louisiana, on April 29, 2016.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**